

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GREGORY WAYNE BRISCOE,                §
                                      §
              Petitioner,             §
                                      §
v.                                    §     No. 4:11-CV-511-A
                                      §
RICK THALER, Director,                §
Texas Department of Criminal          §
Justice, Correctional                 §
Institutions Division,                §
                                      §
              Respondent.             §

## MEMORANDUM OPINION
## and
## ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Gregory Wayne Briscoe, a
state prisoner currently incarcerated in Beaumont, Texas, against
Rick Thaler, Director of the Texas Department of Criminal
Justice, Correctional Institutions Division, respondent.  After
having considered the pleadings, state court records, and relief
sought by petitioner, the court has concluded that the petition
should be denied.

### I.  Factual and Procedural History

Following a crime spree on April 13, 2004, petitioner was
charged by separate indictment with one count of evading arrest,
one count of aggravated robbery with a deadly weapon, and four

counts of robbery by threats in the Criminal District Court
Number One of Tarrant County, Texas.  (1Clerk's R. at 2; 2Clerk's
R. at 2; 3Clerk's R. at 2; 4Clerk's R. at 2; 5Clerk's R. at 2;
6Clerk's R. at 2)[1]  On January 31, 2005, petitioner was given and
signed written plea admonishments waiving his right to a jury
trial and entered an open plea of guilty to the trial court in
each case and true to the repeat offender notice in the robbery
cases.  (1Clerk's R. at 14-19; 2Clerk's R. at 22-27; 3Clerk's R.
at 25-30; 4CLerk's R. at 24-29; 5Clerk's R. at 25-30; 6Clerk's R.
at 66-71)  The trial court ordered preparation of a presentence
investigation report (PSI), and the punishment phase of
petitioner's trial commenced on February 4, 2005.  (RR, vol. 3,
at 4)  Following petitioner's testimony and consideration of the
PSI, the court assessed petitioner's punishment at two years'
imprisonment for the evading arrest offense and life imprisonment
for the remaining offenses.  (*Id*. at 32-33)

Petitioner appealed, but the Second District Court of

---

[1]"1Clerk's R." refers to the clerk's record in trial court
cause no. 0929835D; "2Clerk's R." refers to the clerk's record in
trial court cause no. 0943681R; "3Clerk's R." refers to the clerk's
record in trial court cause no. 0943751R; "4Clerk's R." refers to
the clerk's record in trial court cause no. 0943752R; "5Clerk's R."
refers to the clerk's record in trial court cause no. 0943753R; and
"6Clerk's R." refers to the clerk's record in trial court cause no.
0949251R.

Appeals of Texas affirmed the trial court's judgments, and the
Texas Court of Criminal Appeals refused his petitions for
discretionary review. *Briscoe v. State*, Nos. 2-07-244-CR - 2-07-
249-CR, 2008 WL 2331070 (Tex. App.–Fort Worth June 5, 2008, pet.
ref'd); *Briscoe v. State*, PDR Nos. 869-08 thru 874-08.
Petitioner also filed six state habeas applications, one for each
case, challenging his convictions and sentences, which were
denied by the Texas Court of Criminal Appeals without written
order on the findings of the trial court.  (07State Habeas R. at
cover; 08State Habeas R. at cover; 09State Habeas R. at cover;
10State Habeas R. at cover; 11State Habeas R. at cover; 12State
Habeas R. at cover)[2]  This federal habeas petition followed.

## II. Issues

Petitioner raises the following grounds for habeas relief:

(1)   His guilty pleas were unlawfully induced and not
      made voluntarily because the trial court failed to
      admonish him of the range of punishment attached

---

[2]"07State Habeas R." refers to the state court record of
petitioner's state habeas application no. WR-67,613-07; "08State
Habeas R." refers to the state court record of his state habeas
application no. WR-67,613-08; "09State Habeas R." refers to the
state court record of his state habeas application no. WR-67,613-
09; "10State Habeas R" refers to the state court record of his
state habeas application no. WR-67,613-10; "11State Habeas R."
refers to the state court record of his state habeas application
no. WR-67,613-11; and, "12State Habeas R." refers to the state
court record of his state habeas application no. WR-67,613-12.

to the offenses.

(2)   The trial court failed to order a psychological
      evaluation of him when evidence was before the
      court showing that he was mentally impaired.

(3)   He received ineffective assistance of trial
      counsel because counsel failed to request a
      psychological evaluation of him to determine the
      extent of his mental illness.   (Pet. at 7)

### III.   Rule 5 Statement

Respondent believes petitioner has sufficiently exhausted

his state court remedies as required by 28 U.S.C. § 2254(b).

(Resp't Ans. at 5)

### IV.   Discussion

### *Legal Standard and for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf

of a person in custody pursuant to the judgment of a state court

shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless he

shows that the prior adjudication:   (1) resulted in a decision

that was contrary to, or involved an unreasonable application of,

clearly established federal law, or (2) resulted in a decision

that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court.   28 U.S.C. §

2254(d).   A decision is contrary to clearly established federal

4

law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997.)

5

### *Failure to Admonish*

In his first ground, petitioner claims his pleas were unlawfully induced and not made voluntarily because the trial court failed to orally admonish him of the range of punishment attached to the offenses, in accordance with article 26.13 of the Texas Code of Criminal Procedure.[3]  Relying solely on state statutory and case law, the state appellate court addressed this issue as follows:

> [B]riscoe argues that the trial court failed to admonish him as to the range of punishment attached to each charge and its respective enhancement, thus rendering involuntary his pleas of "guilty" and "true."

> **A. Standard of Review**

> The voluntariness of a guilty plea is determined by the totality of the circumstances as viewed in light of the entire record.  Before accepting a defendant's guilty plea, a trial court is required to admonish the defendant as to, inter alia, the range of punishment attached to the offense.  A trial court may make the required admonitions either orally or in writing.  If

---

[3]Article 26.12 provides, in relevant part:

(a)   Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:

(1)   the range of punishment attached to the offense; . . . .

.   .   .

TEX. CODE CRIM. PROC. ANN. art. 26.12(a)(1) (Vernon Supp. 2010).

the admonitions are made in writing, then the court
must receive a statement signed by the defendant and
the defendant's attorney that the defendant understands
the admonitions and is aware of the consequences of his
plea.  Once the defendant and his attorney have signed
written admonitions and the judge has established that
the defendant has read and understood the admonitions,
the judge is not required to orally inquire about the
voluntariness of the defendant's plea.  When the record
shows that the defendant received an admonition on
punishment, it is a prima facie showing that the plea
was knowing and voluntary, and the burden shifts to the
defendant to show that he entered his plea without
understanding the consequences.  If the defendant has
stated that he understands the nature of his plea and
that it was voluntary, then he has a "heavy burden" to
prove on appeal that his plea was involuntary.

B.  Analysis

     In arguing that his guilty pleas were involuntary,
Briscoe focuses on his oral statements during the
sentencing hearing.  Briscoe argues that those
statements show that he was confused as to the range of
punishment at the time that he entered his pleas and
that he wanted to withdraw his pleas and accept the
State's earlier plea-bargain offer.  Briscoe fails to
acknowledge, however, that the record clearly reflects
that the trial court complied with the statutory
requirements regarding written admonitions.

     The trial court admonished Briscoe in writing of
the applicable range of punishment for each charged
offense.  For each charge, Briscoe and his attorney
both signed a document titled "Written Plea
Admonishments."  Paragraph 3 of each document states,
"If convicted of the above offense, you face the
following range of punishment . . . ."  For the charges
of robbery by threats, each of these documents has an
"X" next to the following statement:  "SECOND DEGREE
FELONY ENHANCED:  Life or any term of not more than 99
years or less than 5 years in the Institutional
Division of the Texas Department of Criminal Justice;

7

and in addition, a fine not to exceed $10,000 may also be assessed." For the charge of aggravated robbery, the document has an "X" next to the following statement: "FIRST DEGREE FELONY ENHANCED: Life or any term of not more than 99 years or less than 15 years in the Institutional Division of the Texas Department of Criminal Justice; and in addition, a fine not to exceed $10,000 may also be assessed." For the charge of evading arrest, the document has an "X" next to the following statement: "STATE JAIL FELONY: A term of not less than 180 days or more than 2 years in a state jail; and in addition, a fine not to exceed $10,000 may also be assessed."

On all six of these documents, Briscoe signed a "Written Waiver of Defendant-Joined By Attorney." Among the statements in these documents are the following: ( 1) "I [the defendant] fully understand each of the above written plea admonishments given by the Court and I have no questions"; (2) "I am aware of the consequences of my plea"; (3) "I am mentally competent and my plea is knowingly, freely, and voluntarily entered"; and (4) "I give up and waive my right to a jury, both as to my guilt and assessment of my punishment." Immediately below Briscoe's signature on each document, his attorney signed the following statement:

> I have fully reviewed and explained the above and foregoing court admonishments, rights, and waivers, as well as the following judicial confession to the Defendant. I am satisfied that the Defendant is legally competent and has intelligently, knowingly, and voluntarily waived his rights and will enter a guilty plea understanding the consequences thereof.

Finally, on each document, Briscoe, his attorney, and the trial court all signed a statement that includes the following: "The Court has given the Defendant the admonishments set out in paragraphs numbered 1 through 15, above. In addition, the Court

8

finds that the Defendant is mentally competent and that his plea is intelligently, freely and voluntarily entered."[FN2]

> FN2.  Notably, on each of these six documents, a statement that Briscoe "waive[s] preparation of a presentence investigation report" has been marked out, and both Briscoe's initials and his attorney's initials appear next to the marked-out statement.

Statements made by both Briscoe and his attorney at the plea hearing also indicate that Briscoe was aware of the range of punishment that he might receive. According to the transcript of the hearing, the State had offered Briscoe a plea bargain of forty-five years' confinement, and Briscoe's attorney had convinced the State to reduce the offer to thirty-three years. Nevertheless, Briscoe rejected the plea bargain and pleaded "guilty" to each charge and "true" to the repeat-offender notices.  Briscoe's attorney stated to the court that he had explained to Briscoe that[-]

> 33 years is roughly half of what he could get under the law . . . I think that Mr. Briscoe very likely . . . is going to receive a life sentence. And I know the Court [hasn't] prejudged that, but I think that's well within the range of possibility . . . Thirty-three is the best the [S]tate is going to do, and it is absolutely against my advice that we enter an open plea in this case and seek a presentence investigation because I do not believe that is going to benefit him at all.  But, beyond that, I mean, I believe even though he's been treated by MHMR I do believe he is competent.  He has the capacity.  He discussed with me these offenses.  He appears to understand-that he understands the procedure.  I do not think this is an issue of competency.  I think he has the right to make this decision even

though it is, in my opinion, the wrong
decision.

At this same hearing, the following exchange
subsequently took place between Briscoe and the trial
court:

> [Trial Court]: . . . You understand the
> ranges of punishment?
>
> [Briscoe]:  Yes, ma'am.
>
> [Trial Court]:  And did you have any
> questions at all about the documents you
> signed?
>
> [Briscoe]:  No, ma'am.
>
> [Trial Court]:  And your attorney has gone
> over this with you.  Did you have any
> questions of him?
>
> [Briscoe]:  He already did, he did. My
> attorney did.
>
> [Trial Court]:  Do you have any questions?
>
> [Briscoe]:  No.
>
> [Trial Court]:  None at all?
>
> [Briscoe]:  No, ma'am.

The trial court concluded the hearing by stating the
following:  "And I do find that you[] are competent and
find that you are freely and voluntarily making this
decision albeit maybe not the smartest one you ever
made.  This is your last chance.  Do you want to change
your mind?"  To this, Briscoe answered, "No, ma'am."

The trial court complied with the statutory
requirements for accepting Briscoe's guilty pleas
through the written admonitions, which Briscoe and his

attorney signed.   Moreover, given those written
admonitions and the detailed discussions at the plea
hearing between Briscoe, his attorney, and the trial
court about Briscoe's pleas, Briscoe's argument that he
was "confused" when he entered his pleas[FN3] fails to
satisfy his "heavy burden" to prove that his pleas were
involuntary.

> FN3.  Specifically, Briscoe argues that his
> ignorance of the consequences of his pleas of
> "guilty" without a plea bargain was "obvious"
> because at the beginning of the sentencing
> hearing, he "fervently requested to be
> allowed to accept, belatedly, the
> thirty-three year plea bargain offer."

*Briscoe*, 2008 WL at *1-3 (citations omitted).

To the extent petitioner claims the trial court failed to

comply with article 26.13 of the Texas Code of Criminal

Procedure, alleged violations of state law are not cognizable on

federal habeas review.   This court may only consider whether

petitioner's federal constitutional rights have been violated.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).   Constitutional

due process requires only that a defendant be advised and

understand the consequences of a guilty plea.   *United States v.*

*Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).   Petitioner points to

no Supreme Court precedent holding that there is an absolute

right to be admonished orally by a trial judge regarding the

range of punishment for a criminal offense.   Although the trial

court did not orally admonish petitioner of the punishment range

for each offense during the plea hearing, petitioner was aware of the maximum punishment he faced for each offense as reflected in the written plea admonishments and evidenced by his signature acknowledging that he was aware of the consequences of his pleas. (07State Habeas R. at 30, 32; 08State Habeas R. at 31, 33; 09State Habeas R. at 31, 33; 10State Habeas R. at 31, 33; 11State Habeas R. at 31, 33; 12State Habeas R. at 31, 33) *See Burdick v. Quarterman*, 504 F.3d 545, 547-48 (5th Cir. 2007); *Cheely v. United States*, 535 F.2d 934, 935 (5th Cir. 1976)(quoting *Tucker v. United States*, 409 F.2d 1291, 1295 (5th Cir. 1969)); *Davis v. Wainwright*, 547 F.2d 261, 265 (5th Cir. 1977), and *McChesney v. Henderson*, 482 F.2d 1101 (5th Cir. 1973) ("The record shows that counsel for [defendant] conferred with him . . . and discussed the possible sentences. . . . Even if we accept [defendant's] allegation that the Court failed to advise him specifically of all of the rights he waived in pleading guilty, that failure does not of itself render the plea involuntary"); *McChesney*, 482 F.2d at 1110 (no express waiver of constitutional rights is necessary under *Boykin* provided the record shows that "accused's plea was intelligently and voluntarily made, with knowledge of its consequences").

*Mental Competency*

Petitioner claims the trial court erred by failing to order, as part of the presentence investigation, a psychological evaluation before sentencing him, as mandated by article 42.12, § 9(i) of the Texas Code of Criminal Procedure, when evidence was before the court showing that he was mentally impaired.[4]  (Pet'r Mem. at 4-6)  Specifically, petitioner asserts counsel's statement to the trial court "that there is also likely to be evidence from MHMR that shows serious and long standing chronic drug abuse," should have alerted the court of the necessity of a psychological evaluation.

The state habeas court considered this issue and found that petitioner failed object to the PSI on the basis that it did not include a psychological evaluation or allege a constitutional violation or fundamental error.  (07State Habeas Supp. R. at 4)

------------

[4]Article 42.12, § 9(i) provides:

(I)   A presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge through its own observation or on suggestion of a party to have a mental impairment   shall   include   a   psychological   evaluation   which determines, at a minimum, the defendant's IQ and adaptive behavior score.   The results of the evaluation shall be included in the report to the judge . . . .

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9(i) (Vernon Supp. 2010).

Based on its findings, the court entered the following

conclusions:

>    10.   [In Texas writ jurisprudence,] [h]abeas corpus is
>          reserved for those instances in which there is a
>          jurisdictional defect in the trial court which
>          rendered the judgment void or for denials of
>          fundamental or constitutional rights.
>
>    11.   The post-conviction writ of habeas corpus is
>          limited, and "lies only to review the
>          jurisdictional defects or denials of fundamental
>          or constitutional rights."
>
>    12.   Failure to order a psychological evaluation
>          pursuant to article 42.12§9(i) of the Texas Code
>          of Criminal Procedure is not a jurisdictional
>          defect or a denial of fundamental or
>          constitutional rights.
>
>    13.   Error under article 42.12§9(i) of the Texas Code
>          of Criminal Procedure is a non-constitutional
>          error subject to a harmless error analysis.
>
>    14.   Complaints subject to a harmless error analysis
>          are not cognizable.
>
>    15.   Collateral attacks are limited to errors which
>          render the proceedings absolutely void.
>
>    16    Because error under article 42.12§9(i) of the
>          Texas Code of Criminal Procedure is subject to a
>          harmless error analysis, Applicant's claim is not
>          cognizable in this application for writ of habeas
>          corpus.

(07State Habeas Supp. R. at 8 (citations omitted))[5]   In turn, the

---

[5]The court cites only to "07State Habeas R." and "07State
Habeas Supp. R." from this point forward because counsel filed the
identical affidavit and the state habeas court entered identical

Texas Court of Criminal Appeals denied relief on the habeas court's findings.

As previously noted, to the extent petitioner claims the trial court failed to comply with article 42.12, § 9(I) of the Texas Code of Criminal Procedure, alleged violations of state law are not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67-68.  Moreover, the state court's reliance on the principle that habeas corpus lies only to review jurisdictional defects or denials of fundamental or constitutional rights and that complaints subject to a harmless error analysis are not cognizable on state habeas review is an adequate state ground to support the state courts' denial of habeas relief and is independent of federal law.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Ex parte Truong*, 770 S.W.2d 810, 813 (Tex. Crim. App. 1989).

Under these circumstances, federal habeas corpus relief is barred unless the petitioner can show either (1) cause for the default and actual prejudice, or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, *i.e.*, that the petitioner is actually innocent of the

---

findings and conclusions of law in each of the other state habeas cases.

crime(s) for which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman*, 501 U.S. at 750; *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001). Petitioner wholly fails to plead cause and prejudice or actual innocence and merely argues, for the first time in his memorandum in support of this federal petition, that he "is entitled to due process right[s] of the 14th Amendment of the United States, because such an omission violate[s] his due process right." (Pet'r Mem. at 6) Petitioner cannot, however, rely upon a legal theory distinct from that relied upon in the state courts. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). Additionally, his general appeal to a constitutional guarantee as broad as due process fails to sufficiently develop a federal constitutional claim. Petitioner's claim under this ground is barred from federal review.

### *Ineffective Assistance of Counsel*

Petitioner claims that his trial counsel was ineffective by failing to request a psychological evaluation to determine the extent of his mental illness and failing to interview defense witnesses. (Pet. at 7; Pet'r Mem. at 6-9)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI.

16

To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered unknowing or involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating an ineffective assistance claim, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Strickland*, 466 U.S. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id*. at 689.

The state habeas court conducted a hearing by affidavit on this issue. Petitioner's trial counsel, Jack V. Strickland, board certified in criminal law since 1976, responded to the allegations as follows:

> I devoted 36 hours to the representation of Applicant. In addition, we had five non-evidentiary settings, plus a plea hearing and a separate sentencing

hearing.  The time I devoted to assist Applicant
included conferences with both Applicant and his
family.  Because of Applicant's self-reported anxiety
and difficulty sleeping, I was particularly sensitive
to any indication that he might not be mentally
competent.  However, at no time did it appear that
Applicant either lacked sufficient ability to consult
with me with a reasonable degree of rational
understanding or that he lacked a rational as well as
factual understanding of the proceedings against him.
Specifically, Applicant understood what he was charged
with and was able to discuss what had happened.
Applicant discussed his extensive history of
criminality and chemical dependency.  We also talked
about the merits of various motions and notices which I
had prepared and filed in Applicant's behalf, including
a request for notice of intent to introduce extraneous
acts, a motion to suppress evidence of extraneous acts,
motions in limine, a motion to suppress oral
statements, and a motion to suppress evidence seized
pursuant to a warrantless search.  Applicant appeared
at all times to appreciate the purposes behind such
filings and the benefits to be gained should the
motions be granted.  In particular, we discussed the
many acts of misconduct set out in the State's response
to our request for notice of extraneous acts.  I was
then, and am now, convinced that Applicant recognized
the seriously detrimental effect that evidence of such
facts would have had on a jury.  Applicant also made an
informed choice to elect jury assessment of punishment.
Lastly, we discussed Applicant's lengthy criminal
record from both Texas and Louisiana.

     In addition to demonstrating an ability to
rationally discuss the six felony cases pending against
him, there was no doubt in my mind that Applicant
understood the proceedings against him.  First, it
should be noted that Applicant had previously been
convicted of two felony offenses of distribution of
cocaine, and a felony burglary, so he was rather well-
acquainted with the criminal justice system.  Applicant
understood the roles of defense attorney, prosecutor
and judge and knew that the State has the burden of

18

proof in a criminal prosecution.  In an effort to assist me in the representation of him, Applicant provided me with a list of persons with whom I could discuss his case and who might be called as character witnesses in his behalf should the need arise. Applicant was well-informed as to his right to plead not guilty and his right to elect judge or jury punishment.  We spent time going over the effect of a guilty plea, discussing at length the admonitions, waivers, and judicial confessions.  Applicant was not eligible for probation under Texas law.  It is particularly important to note that Applicant made the decision to plead "open" to the court, and did so against my rather adamant advice.  Finally, Applicant appeared to understand, although not be happy about, the fact that voluntary intoxication did not provide a defense to his cases.  Applicant continued to hope that his drug abuse would result in more lenient sentences. I advised Applicant that in light of the serious nature of the cases against him, that hope standing alone did not provide us with a realistic trial strategy.

Prior to Applicant entering his pleas of guilty, I obtained and reviewed MHMR records from the Tarrant County jail.  Those records, which included reports and diagnoses from a psychiatrist, revealed that Applicant suffered from anxiety disorder and polysubstance disorder.  Frankly, anxiety seemed to me to be an altogether appropriate reaction to the difficult situation in which Applicant found himself.  In fact, it might be more indicative of mental imbalance if one were *not* anxious under such circumstances.  The records also noted that Applicant appeared oriented, was alert, and exhibited normal thought processes.  Applicant had never attempted suicide, either in the free world or while imprisoned.  He had completed 10th grade and received his GED.  Although he reported hearing voices on January 21, 2005, that claim was made only once and in my opinion evidenced a half-hearted attempt at malingering.  There was no evidence of psychosis or incompetency.

Had I been presented with the slightest evidence
of mental incompetency or had any concern regarding
Applicant's competency arisen during the 4½ months I
represented Applicant, I would have immediately
requested a mental status examination by a forensic
psychologist.  If warranted, there was not a reason in
the world not to have done so.  In my practice, I
routinely file motions requesting such examinations and
estimate that I do so approximately ten to twelve times
a year.

.  .  .

Unfortunately, Applicant received a very harsh,
but arguably well-deserved sentence for these offenses.
Having disregarded the advice of counsel and pled
guilty without benefit of a plea bargain, Applicant now
suffers from what might be described as buyer's
remorse.  Nonetheless, his claim is without merit and
should be denied.

(07State Habeas R. at 53 (emphasis in original))

The state habeas court found counsel's affidavit credible

and entered factual findings consistent with the affidavit.   (*Id.*

at 4-7)   Under state law, "mental impairment encompass[es] a

mental weakness, deterioration, or damage."   (*Id.* at 9)   The

state court concluded petitioner failed to prove that his MHMR

records indicated a mental weakness, deterioration, or damage.

Thus, based on its findings, and applying the *Strickland*

standard, the state court concluded counsel's decision not to

request a competency hearing was the result of reasonable trial

strategy because there was no indication that petitioner was

incompetent to stand trial or "indicators" of mental impairment. (*Id.* at 8-10)   In turn, the Texas Court of Criminal Appeals denied relief on the habeas court's findings.

To the extent petitioner claims the state court's decision is contrary to state law, the claim is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67-68.   Under federal constitutional law, the conviction of a legally incompetent defendant violates due process.  *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000). The federal constitutional standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States,* 362 U.S. 402, 402 (1960); *Bouchillon v. Collins,* 907 F.2d 589, 592 (5th Cir. 1990).   The competency standard in guilty plea cases is identical to the competency standard to stand trial. *Godinez v. Moran,* 509 U.S. 389, 398-99 (1993).

Petitioner, in the state habeas proceedings, and now, relies on certain records from Tarrant County Mental Health and Mental Retardation Services (MHMR) in support of his argument that he was mentally incompetent to stand trial.   The records reflect

petitioner was diagnosed with adjustment disorder (with anxiety)
and polysubstance dependence, prescribed Seroquel, Depakote, and
Elavil, and was seen by a mental health provider in the Tarrant
County jail on at least two occasions.  (07State Habeas R. at 40-
43; RR, Supp. R., PSI § VII, "Social History")  On October 23,
2004, petitioner reported that he was experiencing "mood swings"
and sleep disturbances, and, on January 21, 2005, he reported he
was sleeping better but still "heard voices" and was experiencing
compulsive behavior about his habits.  However, this evidence,
alone, viewed objectively, is not proof that petitioner was
incapable of consulting with trial counsel and/or did not
understand the proceedings on the day of the plea proceedings.
Based on counsel's interaction with petitioner, counsel was
clearly under the opinion that petitioner was competent to stand
trial.  Petitioner has failed to demonstrate objective facts
known to counsel that would have raised a doubt as to his
competency.  There is no evidence that petitioner suffered from
any psychological problems other than those considered by counsel
or evidence that a psychological evaluation would have resulted
in significantly lighter sentences being imposed.  Without
substantiation in the record, a court cannot consider a habeas
petitioner's mere assertions on a critical issue in his pro se

petition to be of probative evidentiary value. *Ross v. Estelle*,
694 F.2d 1008, 1011-12 (5th Cir. 1983).

With respect to petitioner's claim that counsel was
ineffective by failing to interview and call witnesses on his
behalf, "complaints of uncalled witnesses are not favored in
federal habeas corpus review because the presentation of
testimonial evidence is a matter of trial strategy and because
allegations of what a witness would have stated are largely
speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.
2009). To prove that counsel was ineffective for failing to call
a witness, "the petitioner must name the witness, demonstrate
that the witness was available to testify and would have done so,
set out the content of the witness's proposed testimony, and show
that the testimony would have been favorable to a particular
defense." *Id.*

The state habeas court found that, although petitioner
provided counsel "a list of persons to discuss the case and
possible character witnesses," petitioner failed to allege what
witnesses counsel failed to contact and failed to produce
affidavits from witnesses regarding what they would have
testified to had counsel contacted them. (07State Habeas Supp.
R. at 5) Failure to produce affidavits (or similar evidentiary

23

support) from uncalled witnesses is fatal to the claim of ineffective assistance.  *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (complaint of uncalled witnesses failed where petitioner failed to present affidavits from the missing witnesses).

For the reasons discussed herein,

The court ORDERS petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that all pending motions not previously ruled upon be, and are hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED February _____, 2012.

_____
JOHN McBRYDE
UNITED STATES DISTRICT JUDGE

24